UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BARBARA WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br><br>v.<br><br>REGIONS FINANCIAL CORPORATION; JACKSON MOORE; C. DOWD RITTER; MORGAN KEEGAN & COMPANY, INC.; CHARLES D. MAXWELL,<br><br>　　　Defendants. | CASE NO. CV 08-B-448-S |

## MEMORANDUM OPINION

This case is currently pending before the court on defendants Regions Financial Corporation, Jackson W. Moore, and C. Dowd Ritter's ("the Regions Defendants") Motion to Stay Proceedings Pending Resolution of Motions to Transfer Substantially Similar Actions to This Court, (doc. 11),[1] to which the remaining defendants, Morgan Keegan & Co., Inc., and Charles D. Maxwell ("the Morgan Keegan Defendants"), who have not yet appeared, have consented. (Doc. 11 at ¶ 6.) Subsequent to the motion to stay, and as partial grounds for an opposition to the motion to stay, (doc. 14 at 2), plaintiff Barbara Williams ("Williams") filed a Motion to Dismiss Pursuant to Fed. R. Civ. P.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

41(a)(2), (doc. 13), which all defendants have jointly opposed, (doc. 18). Based on the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Motion to Dismiss Pursuant to Fed. R. Civ. P. 41(a)(2), (doc. 13), is due to be granted, and that the Motion to Stay Proceedings Pending Resolution of Motions to Transfer Substantially Similar Actions to This Court, (doc. 11), is due to be denied as moot.

## I. FACTUAL SUMMARY AND PROCEDURAL HISTORY

The same facts and procedural history are relevant to both of the pending motions. On March 12, 2008, Williams filed a class action complaint, (doc. 1), against the defendants, on behalf of herself and all persons who were participants in or beneficiaries of the Regions Financial Corporation 401(k) Plan, the AmSouth Bancorporation Thrift Plan, and the Morgan Keegan & Company Revised Profit Sharing and Retirement Plan (collectively, "the Plans"), at any time between November 4, 2006, and the present, and where Plan accounts included investments in Regions Financial Corporation common stock, the RMK Select High Income Bond Fund, and/or the RMK Select Intermediate Fund. (Doc. 1 at 1, ¶ 57.) The complaint alleges that the defendants breached their fiduciary duties, in violation of the Employee Retirement Income Security Act ("ERISA"), by: making imprudent investments, particularly by investing in large amounts of Regions common stock and funds; failing to provide complete and accurate information about the Plans; failing to avoid conflicts of interest in Plan management; and failing to adequately monitor other fiduciaries. (*Id.* at ¶¶ 162–196.)

The Regions Defendants' May 15, 2008, motion to stay informed the court that

there were two class action complaints filed against them in the U.S. District Court for the Western District of Tennessee *after* Williams filed her complaint in this court: *Hamby v. Morgan Asset Management* ("*Hamby*"), No. 08-2192 (W.D. Tenn., filed Mar. 31, 2008), and *Jackson* v. *Morgan Asset Management* ("*Jackson*"), No. 08-2231 (W.D. Tenn., filed Apr. 11, 2008).[2]  (Doc. 11 at ¶¶ 2, 3, Ex. A, Ex. B; Doc. 18-2 at 4 n.1.)  Both *Hamby* and *Jackson* were filed by the same counsel (but different counsel from that in *Williams*) and allege breaches of fiduciary duties under ERISA.  (Doc. 11 at Ex. A, Ex. B.)  *Hamby* does not name the Morgan Keegan Defendants as co-defendants, while *Jackson* does; moreover, both *Hamby* and *Jackson* include a number of defendants that are not named in *Williams*, and who appear to be additional company directors or administrators of the Plans.  (*Id.*)  Since the filing of *Hamby* and *Jackson*, the only cases discussed in the motion to stay and opposition, a third ERISA class action, *Shamblin v. Regions Financial Corporation* ("*Shamblin*"), No. 08-2259, (W.D. Tenn, filed Apr. 29, 2008), has been filed against the exact same defendants as in *Williams* in the Western District of Tennessee.[3]  (Doc. 13 at 7 n.3; Doc. 18-2.)  The Regions Defendants have filed motions to transfer in each of these three Tennessee ERISA cases, requesting transfer to the Northern District of Alabama because the *Williams* case was filed first, because of the similarity between

---

[2]There is also an employment discrimination lawsuit against Regions Bank filed by the named plaintiff in *Hamby* that is pending before another judge in this district, *Hamby v. Regions Bank*, CV 08-972 (N.D. Ala., filed June 3, 2008).  (Doc. 18-2 at 6 n. 9.)

[3] Neither party has provided the court with a copy of the *Shamblin* complaint.

*Williams* and the Tennessee actions, and because of the convenience of the Alabama venue for the parties, per 28 U.S.C. § 1404(a).  (Doc. 18-2.)  The plaintiffs in the Tennessee ERISA actions have moved that court for entry of an order consolidating those cases, appointing interim lead counsel, and establishing a case management structure.  (Doc. 13 at 11 n.6.)[4]

In their opposition to the motion to dismiss, the defendants include a copy of the motion to transfer in the *Shamblin* case, which identifies the named plaintiffs in both *Hamby* and *Shamblin* as residents of Alabama, and to which is attached a Severance and Release Agreement signed by the named plaintiff in *Jackson*, a Tennessee resident, that waives and releases all claims under ERISA.  (Doc. 18-2 at 5–7, 19–20.)  The plaintiff in *Williams* is a resident of Georgia.  (Doc. 13 at 6; Doc. 18 at 3.)

Through the attachments to their opposition to the motion to dismiss, the defendants admit that there are also number[5] of securities class actions pending in the Western District of Tennessee that relate to investments in the RMK funds.  (Doc. 18-2 at

---

[4] Williams's motion to dismiss purports to attach a copy of this motion, but no attachments to the motion to dismiss have been filed.

[5] The parties do not agree on the exact number of securities class actions filed, perhaps because new ones have recently been filed.  Williams's motion to dismiss identifies four: *Atkinson v. Morgan Asset Management*, No. 07-2784 (W.D. Tenn. 2007), *Willis v. Morgan Keegan & Co.*, No. 07-2830 (W.D. Tenn. 2007), *Hartman v. Morgan Keegan & Co.*, No. 08-2071 (W.D. Tenn. 2008), and *Gregory v. Morgan Keegan & Co.*, No. 08-2078 (W.D. Tenn. 2008).  (Doc. 13 at 7–8.)  The defendants, in their motion to transfer in *Shamblin*, identify three others, *DeJoseph*, *Ryan*, and *Landers*, but they do not provide full case names or citations.  (Doc. 18-2 at 11.)  Neither party has provided the court with copies of the complaints in any of these actions.

4

11.) They further note that there are two shareholder derivative suits, brought by shareholders of Regions Financial Corporation, that are pending before another judge in this district, *Catholic Medical Mission Board v. Ritter*, No. 08-485 (N.D. Ala., filed Mar. 19, 2008), and *Stevens v. Ritter*, No. 08-550 (N.D. Ala., filed Apr. 1, 2008). (*Id.* at 11–12.)

Williams's motion to dismiss was filed on May 30, 2008, two weeks after the Regions Defendants' motion to stay. (Doc. 13.) Prior to either the motion to dismiss or the motion to stay, the court had set the *Williams* case for a scheduling conference, pursuant to Rule 16(b) of the Federal Rules of Civil Procedure ("the Federal Rules"), for July 17, 2008. (Doc. 10.) Because of the filing of these motions, as well as the ones in the cases in the Western District of Tennessee, all parties consented to a motion to defer their Rule 26 obligations, (doc. 16), so the court vacated the order setting its 16(b) scheduling conference, (doc. 19).

## II. LEGAL STANDARD ON 41(a)(2) MOTION TO DISMISS

Whereas Rule 41(a)(1) of the Federal Rules of Civil Procedure ("the Federal Rules") allows a plaintiff to dismiss an action *without a court order*, either upon a notice of dismissal filed before the opposing party serves either an answer or a motion for summary judgment, or by a stipulation of dismissal signed by all parties who have appeared, *see* Fed. R. Civ. P. 41(a)(1), Rule 41(a)(2) provides:

> Except as provided in Rule 41(a)(1), an action may be
> dismissed at the plaintiff's request only by court order, on

5

> terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41(a)(2). With respect to Rule 41(a)(2), the Eleventh Circuit has commented: "The purpose of the rule 'is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions.'" *See McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 856 (11th Cir. 1986) (quoting *Alamance Indus., Inc. v. Filene's*, 291 F.2d 142, 146 (1st Cir.), *cert. denied*, 368 U.S. 831 (1961)). The Eleventh Circuit has also emphasized that "[t]he district court enjoys broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2)," *see Pontenberg v. Boston Scientific Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001) (per curiam), defining a district court's "discretion" as meaning "a range of choice," and noting that the district court's decision "will not be disturbed as long as it stays within that range and is not influenced by any mistake of law," *see McBride v. JLG Indus.*, 189 Fed. Appx. 876, 878 (11th Cir. 2006) (per curiam) (internal quotation marks omitted). Indeed, the district court is required only to "exercise its broad equitable discretion under Rule 41(a)(2) to weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate." *See McCants*, 781 F.2d at 857.

The Eleventh Circuit has declined to comment on the specific situations that might compel a district court to either grant or deny a Rule 41(a)(2) motion to dismiss, distancing itself from the approach taken by other circuits to set forth non-binding factors for a district court to consider when faced with such a motion. *Compare Pontenberg*, 252 F.3d at 1258–59, 1259 n.5 *with Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 473–74 (7th Cir. 1988) (identifying the "*Pace*" factors for "plain legal prejudice," which include the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant), *Phillips USA v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996) (citing similar factors as *Kovalic*), *and Witzman v. Gross*, 148 F.3d 988, 992 (8th Cir. 1998) (citing the exact same factors as *Kovalic*). The Eleventh Circuit has further observed that "[t]he crucial question to be determined is, Would the defendant lose any substantial right by the dismissal," *see Pontenberg*, 252 F.3d at 1255 (internal quotation marks omitted), and has advised that "in most cases, a voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice, *other than the mere prospect of a subsequent lawsuit*, as a result," *see McCants*, 781 F.2d at 856–57 (emphasis in original). Critically to the present case, "it is no bar to a voluntary dismissal that the plaintiff may obtain some tactical advantage over the defendant in future litigation." *See id.* at 857.

## III. DISCUSSION

### A. MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 41(a)(2)

Because a dismissal of this action would moot the motion to stay, the court first examines the merits of Williams's motion to dismiss. Williams concedes that she "intends to refile her action in the Western District of Tennessee, if the court grants this motion," and that she plans to consolidate her case with the three Tennessee ERISA actions "to jointly advance the interests of the putative classes and to ensure [Williams's] continued presence at the forefront of any consolidated action." (Doc. 13 at 10, 10 n.5.) As grounds for dismissal, Williams cites the fact that the three similar ERISA cases, as well as the several securities class actions, are pending in the Western District of Tennessee, and she argues that her claims will be effectively litigated in that forum without prejudice to the defendants. (*Id.* at 7–12.) In response, the defendants collectively argue that they will indeed be prejudiced by dismissal of the action and by Williams's intended refiling in Tennessee because of: 1) Williams's impermissible forum-shopping, 2) the first-filed rule; and 3) the venue factors relating to 28 U.S.C. § 1404(a), as well as the differences in substantive law applied by courts in the Sixth versus the Eleventh Circuit. (Doc. 18 at 4–14.)

As a preliminary matter, and as Williams points out in her reply, (doc. 21 at 6), neither of the Morgan Keegan Defendants have filed any responsive pleading to Williams's complaint; instead, on four separate occasions, those defendants have

requested and have been granted extensions of time to do so, (docs. 9, 17, 22, 23). In regards to the Morgan Keegan Defendants, then, Rule 41(a)(1) suggests that Williams does not require a court order to dismiss its action against them, since neither one has answered the complaint nor filed a motion for summary judgment. Of course, a right of dismissal against only two of the five defendants is of little practical value to Williams, who desires to refile the entire action elsewhere, but the court nevertheless observes that it might only be necessary for it to adjudicate the 41(a)(2) dismissal of the Regions Defendants. Since all five defendants have joined in the opposition to Williams's motion to dismiss, however, the court notes that its opinion applies to *all* defendants, in the event that all fall within the purview of Rule 41(a)(2).

**1. "Forum-shopping"**

Although Williams denies that her motion to dismiss is motivated by what the defendants disparagingly characterize as "forum-shopping,"[6] the court does not even need to consider whether the plaintiff is forum-shopping, since the court finds that a litigant's

---

[6] Williams instead argues that she is merely coordinating her action with those filed in the Western District of Tennessee and engaging in a "private ordering" of potentially competing counsel, as encouraged by the *Manual for Complex Litigation* ("the *Manual*") §§ 10.22, 21.272. The court has reviewed these sections in the *Manual* and finds that while section 10.225 does discuss the coordination of *counsel* in "related litigation [that] is pending in other federal or state courts," it does not clearly condone or recommend the coordination of the *actions* themselves by voluntarily dismissing an action and refiling it in the same court as the other actions. In addition, section 21.272 appears to relate only to the ordering of counsel within a single consolidated class action suit, and does not involve ordering of counsel in separate class actions filed in different courts, or the ordering of the class actions so that the first-filed case will establish jurisdiction in a particular federal court. As a result, the court does not agree with Williams that the *Manual* is a proper source for dismissal of this action.

search for the best forum is akin to "some tactical advantage . . . in future litigation" that the Eleventh Circuit expressly declared in *Pontenberg* as being no bar to a Rule 41(a)(2) dismissal. Furthermore, the defendants have not presented any binding or persuasive authority that would counsel the court to deny dismissal simply because Williams has decided that it would best serve her interests to dismiss her suit in the Northern District of Alabama and refile in the Western District of Tennessee. Indeed, the two cases to which the defendants cite for judicial disapprobation of "forum-shopping" are inapposite because they stand only for the more limited proposition that where a plaintiff's legally cognizable claims, and in turn the potential defenses of the defendant, might be different in one circuit than in another, it is proper for the court to consider these substantive law differences in deciding whether to grant dimissal. *See Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 176 F.R.D. 566, 571 (D. Minn. 1997), *aff'd*, 178 F.3d 941 (8th Cir. 1999), *cert. denied*, 528 U.S. 1117 (2000); *In re Old Kent Mortgage Co. Yield Spread Premium Litig.*, 191 F.R.D. 155, 157–58 (D. Minn. 2000). Thus, while these cases might enhance the defendants' argument that any substantive legal differences between the Sixth and Eleventh Circuits amount to "clear legal prejudice," as discussed in Part III.A.3 below, they do not support the defendants' contention that "forum-shopping" itself is inappropriate and a reason to deny a voluntary dismissal under Rule 41(a)(2).

The defendants also cite to two cases from other courts in the Eleventh Circuit in which a Rule 41(a)(2) motion to dismiss was denied and where the plaintiff had sought to

10

refile in another federal district, but those cases are easily distinguishable from the facts presented in *Williams*; moreover, neither case mentions "forum-shopping" itself as a justification for its ruling. First, in *Robinson v. Warrior & Gulf Navigation Co.*, the court denied a plaintiff's 41(a)(2) motion to dismiss when the plaintiff wanted to refile the action in another federal court (as well as in another circuit), but it did so specifically because it found that the defendant would suffer "clear legal prejudice" by losing the availability of its witnesses and because plaintiff's motion was untimely, having been filed after the close of discovery and when "it would be inequitable to allow plaintiff to start over, conduct additional discovery, and identify experts to testify at trial." *See* No. 05-748, 2007 WL 274370 (S.D. Ala., Jan. 30, 2007), at *2. The court noted that although it could have granted the motion to dismiss but imposed conditions on the plaintiff, such as the payment of costs and fees incurred by the defendant, or restricting the venue in which the plaintiff could refile, the remaining prejudice to the defendant was still too great to justify a dismissal, even with conditions. *See id.* For the defendants in *Williams*, while there might be some risk that certain witnesses will be unavailable if the action is refiled in the Western District of Tennessee — though, as Williams notes, Morgan Keegan & Co., Inc., is headquartered in that district, (doc. 21 at 11) — there certainly has not been any similar delay or pendency of discovery proceedings that would create such significant prejudice for the defendants to warrant denying dismissal.

   The defendants' other supporting case, *Myers v. Hertz Penske Truck Leasing, Inc.*,

11

centered around a plaintiff's improper use of the removal statute, 28 U.S.C. § 1441, since the plaintiff in *Myers* attempted to defeat removal of a properly-removed action by refiling the case in state court with new non-diverse defendants; therefore, it was these removal problems, and not "forum shopping," that compelled the court to deny dismissal under Rule 41(a)(2). *See* 572 F. Supp. 500, 502–03 (N.D. Ga. 1983). In addition, similar to *Robinson*, the *Myers* court pointed out that the "defendant has already gone to considerable time and expense preparing for this case," so "[j]ustice would not be served by allowing a dismissal at this time." *See id.* at 503. Such cost-producing delays and abuses of the removal statute are simply not at issue in *Williams*.

The defendants have not convinced the court that even if Williams is engaging in "forum-shopping," the court should deny Williams's motion to dismiss on that basis alone. The key question is whether dismissal, and Williams's admitted intention to refile in the Western District of Tennessee should her motion be granted, confer "clear legal prejudice" upon the defendants. The court finds that there is no legal basis for it to conclude that "forum shopping" itself results in "clear legal prejudice" for the defendants.

**2. First-Filed Rule**

The first-filed rule is a device of the federal common law used to assign a common forum to cases with "overlapping issues and parties" that are pending in multiple federal courts: the rule requires all federal courts to apply the same presumption favoring the forum of the first-filed suit. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th

Cir. 2005). The courts have made it understandably difficult to obtain an exception to the first-filed rule, mandating that the party objecting to the jurisdiction of the first-filed forum prove "compelling circumstances." *See id.*

The court recognizes the importance of the first-filed rule and acknowledges that, insofar as there are overlapping issues and parties between *Williams* and the Tennessee ERISA actions, a question that is not before this court and that, to the court's knowledge, has not yet been resolved,[7] *Williams* is, in fact, the "first-filed" of these cases. There is no indication, however, that Williams requests an exception to the first-filed rule; while the practical result of dismissing Williams's case without prejudice might be the circumvention of the first-filed rule, nowhere in the text of Rule 41(a)(2) or in any authority interpreting that rule does the mere avoidance of the first-filed rule preclude dismissal. Likewise, while the first-filed rule might result in tactical advantages for the defendants when applied, it is not a "substantial right" of the defendants that they risk losing upon dismissal, but rather an instrument to ensure fairness among *all* parties when the potential for multiple conflicting forums exists. As with their "forum-shopping" argument, the defendants have failed to convince the court that there is any legal basis to

---

[7] To the extent that such a question must be answered in order to adjudicate a motion to transfer, however, the court in the Western District of Tennessee is presently deciding motions to transfer in the *Hamby*, *Jackson*, and *Shamblin* cases, partially on the grounds that the related *Williams* case was filed first in this court, and partially on the section 1404(a) venue factors. (Doc. 11-4; Doc. 11-5; Doc. 18-2.) Presumably, even if Williams refiles in the Western District of Tennessee upon dismissal and becomes the "last-filed" of these cases, the defendants can still move to transfer all of the cases on the latter basis, that the Northern District of Alabama is a more convenient forum.

find that they would suffer "clear legal prejudice" as the result of a court-ordered dismissal, simply because the first-filed rule would no longer apply to render *Williams* the first-filed case.

### 3. Section 1404(a) Venue Factors and Sixth/Eleventh Circuit Differences

The defendants devote a substantial portion of their opposition brief to an argument that the section 1404(a) venue factors[8] should be applied to prevent dismissal, employing a chart to display the similarities between the *Williams*, *Jackson*, *Hamby*, and *Shamblin* cases. This argument, however, is wholly without case law to support it: none of the cases to which the defendants cite, nor any case that the court can locate, discusses the use of the section 1404(a) factors to evaluate a Rule 41(a)(2) motion, that is, to decide whether the defendants will suffer "clear legal prejudice" upon dismissal. The lack of any authority supporting this attempted use of the section 1404(a) factors is consistent with the idea that Rule 41(a)(2) is concerned solely with *legal* prejudice, and not the practical prejudices addressed by section 1404(a) in determining the best venue for a case. Since there is no indication that the court is required to consider the section 1404(a)

---

[8] Section 1404(a) provides only that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought," *see* 28 U.S.C. § 1404(a), but courts have established a number of factors contributing to the "convenience" of the parties and witnesses, including: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances," *see Manuel*, 430 F.3d at 1135 n.1.

factors in deciding this motion to dismiss, and that even if it is, any venue-related disadvantages for the defendants would amount only to practical prejudice, and not to any *legal* prejudice, the court finds that the defendants' argument regarding these factors is without merit. The court therefore turns to the defendants' final contention, that there are substantive differences between Sixth and Eleventh Circuit law that will yield "clear legal prejudice" for the defendants if the case is dismissed.

The defendants maintain that while district courts in the Eleventh Circuit, in which this court is located, have dismissed ERISA company stock cases where there are no allegations beyond a mere decline in stock value, district courts in the Sixth Circuit, a circuit that covers the Western District of Tennessee, have allowed claims to proceed even where there are no allegations to suggest that "a company is facing imminent or impending collapse." *Compare In re Coca-Cola Enters., Inc., ERISA Litig.*, No. 06-953, 2007 WL 1810211, at * 10 (N.D. Ga. June 20, 2007) (dismissing a claim for breach of the duty of prudence because there was no allegation that the company "is on the verge of financial collapse"), *Pedraza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262, 1276 (N.D. Ga. 2007) (noting the absence of Eleventh Circuit controlling authority on the subject but finding that a plaintiff had not alleged sufficient facts to overcome a presumption of prudence, to the extent that such a presumption had been recognized by the Third and Sixth Circuits in *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995), and *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995), respectively), *and Smith v. Delta Airlines, Inc.*, 422 F. Supp. 2d 1310, 1331 (N.D. Ga. 2006)

15

(dismissing a case on the grounds that, regardless of whether the Eleventh Circuit eventually adopts certain other circuits' interpretation and makes a stock plan's failure to invest in something other than employer stock actionable, the complaint in the instant case is distinguishable as one that only alleges a decline in stock value, and not also knowledge of impending collapse or of some other impropriety, such as misrepresentation, fraud, or accounting irregularities) *with In re Ford Motor Co. ERISA Litig.*, 2008 WL 880161, at *19 (E.D. Mich. Mar. 31, 2008) (using the Sixth Circuit's opinion in *Kuper* to deny a motion to dismiss because the plaintiff had alleged sufficient facts to state a claim that a prudent fiduciary would have acted differently under similar circumstances, and specifically finding that the plaintiff was not required to plead fraud or "impending collapse"); *In re Gen. Motors ERISA Litig.*, No. 05-71085, 2006 WL 897444, at *13 (E.D. Mich. Apr. 6, 2006) (similar ruling as *In re Ford*), *In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850, 860 (N.D. Ohio 2006) (similar ruling as *In re Ford*, and additionally cautioning that "[t]he Court has serious doubts as to whether it is appropriate to evaluate the *Moench* presumption this early in the litigation," because "requiring a plaintiff to plead facts overcoming the *Moench* presumption conflicts with Rule 8(a)'s notice-pleading standard") (N.D. Ohio 2006), *and Rankin v. Rots*, 278 F. Supp. 2d 853, 867, 879 (E.D. Mich. 2003) (emphasizing that the court was applying the Rule 8(a) notice pleading standard, and therefore that the plaintiff has sufficiently stated a claim).[9]

---

[9] Defendants have also cited to *In re Gen. Motors ERISA Litig.*, No. 05-71085, 2007 WL 2463233 (E.D. Mich. Aug. 28, 2007), but the court cannot discern any discussion in that case that

16

From this collection of district court cases, none of which has binding precedential value on this court, the court finds most illuminating the fact that the Eleventh Circuit has not yet rendered *any* opinion about the standard to be applied on a motion to dismiss an ERISA company stock case; moreover, as each of the cases cited from the courts within the Sixth Circuit point out, the Sixth Circuit has not squarely decided this issue either, since in *Kuper* the Sixth Circuit confronted a case that had already proceeded through discovery. *See, e.g.*, *In re Ford*, 2008 WL 880161, at *11 ("The Sixth Circuit has not ruled on how Kuper applies to a motion to dismiss.") The defendants have also failed to mention at least one case from a court within the Eleventh Circuit that *denied* a motion to dismiss using the *Kuper/Moench* presumption, finding that "Plaintiffs may be able to set forth a set of facts in which a reasonably prudent person would have found this unexpected nature of the loss to be sufficient to signal that Company stock was no longer a prudent investment," even though the accounting losses in that case admittedly represented only a small fraction of the total company profits. *See Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361, 1367–68 (N.D. Ga. 2004). Particularly given the lack of uniformity with which courts in the Eleventh Circuit have evaluated ERISA breach of duty claims, and the fact that the Eleventh Circuit has not yet issued an opinion that can uniformly bind the courts within this circuit, the court deems it impossible, as well as imprudent, to predict the way a court in the Eleventh Circuit, or, for that matter, the Sixth Circuit, would rule on the claims in this case. Because the court cannot

---

is directly relevant to this opinion.

state with any certainty how Williams's claims will fare either in this court or in the Western District of Tennessee, where Williams intends to refile the action, there is no way for the court to find that the defendants will suffer "clear legal prejudice" by a dismissal of the case. With no successful arguments from the defendants establishing that "clear legal prejudice" would result from dismissal, the court concludes that Williams's motion to dismiss is due to be granted.

### 4. Conditions on Dismissal

As discussed above, the court has determined that the defendants would suffer no "clear legal prejudice" from the issuance of an order granting Williams's motion to dismiss, other than the mere prospect — or, in this case, near certainty — of a subsequent lawsuit, and thus that Williams's motion is due to be granted. The court further finds no need to attach curative conditions to the dismissal that will result from its ruling, particularly because of the early stage of the case and because the defendants have incurred no significant expenses other than those involved in filing the motion to stay and in opposing the motion to dismiss. As a result, the court will grant Williams's motion to dismiss without prejudice and without the imposition of any conditions.

## B. MOTION TO STAY PENDING TRANSFER

Because the motion to dismiss is due to be granted, there will be no proceedings for the court to stay once the dismissal order is entered. As a result, the Regions Defendants' motion to stay is due to be denied as moot.

## IV. CONCLUSION

Based on the foregoing, the court is of the opinion that Williams's Motion to Dismiss Pursuant to Fed. R. Civ. P. 41(a)(2), (doc. 13), is due to be granted, and because of that decision, that the Regions Defendants' Motion to Stay Proceedings Pending Resolution of Motions to Transfer Substantially Similar Actions to This Court, (doc. 11), is due to be denied as moot.  The case is therefore due to be dismissed without prejudice. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

   **DONE** this 25th day of August, 2008.

*Sharon Lovelace Blackburn*
_____
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE